UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALBERT TIMOTHY HARRIS,

        Plaintiff,

  v.

FORTIS BENEFITS INSURANCE COMPANY; LEGACY MARKETING GROUP LONG TERM DISABILITY PLAN; REGAN HOLDING CORPORATION LONG TERM DISABILITY PLAN; and DOES 1 through 20, inclusive,

        Defendants.

No. C 05-0276 MHP

**MEMORANDUM & ORDER**
**Re: Cross-Motions for Partial Summary Judgment**

Plaintiff Albert Timothy Harris filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., seeking review of defendant Fortis Benefits Insurance Company's determination that he is not eligible to receive disability benefits under the provisions of group long-term disability insurance policy. Now before the court are the parties' cross-motions for summary adjudication as to the issue of what standard of review this court should apply in evaluating Fortis' decision. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

    The Legacy Marketing Group hired plaintiff Timothy Albert Harris as a graphic designer in August 2000. Grey Decl., Exh. 2 at 883 (hereinafter "Claim File"). On October 17, 2000, Harris suffered a lower back injury as a result of bending over and lifting a heavy box in the workplace and

was subsequently diagnosed with degenerative disc disease. Id. He has not returned to work since that date.

As a Legacy employee, Harris was covered under a group long-term disability insurance policy issued by Fortis Benefits Insurance Company and subject to the requirements of ERISA. See generally id. at 498-530. The policy pays long-term disability benefits for a period of up to thirty-six months if the insured is unable to perform "at least one of the material duties of [his or her] regulation operation" as a result of injury, illness, or pregnancy and is under the "regular care and attendance of a doctor." Id. at 504 (original emphasis omitted). Beyond the initial thirty-six month period of disability, the policy will continue to pay benefits if the insured's injury, illness, or pregnancy prevents the insured from "performing at least one of the material duties of each gainful occupation" that he or she is qualified to perform. Id. (original emphasis omitted). The policy also includes a standard "discretionary clause," pursuant to which Fortis reserves "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy." Id. at 523.

On November 28, 2000, Harris applied for long-term disability benefits, claiming that he was unable to perform his duties as a graphic designer because of his back injury. After reviewing medical records provided by Harris' primary care physician, Edward Loker, and his chiropractor, Robert Dubin, Fortis denied Harris' benefits claim. Id. at 353-54. According to Fortis' March 27, 2001 denial letter, Harris' medical records indicated that he had not been seen by Dr. Loker since November 9, 2000 and that he had only received chiropractic treatment since that time. Id. at 353. Fortis also noted that Harris was not taking any pain medication or muscle relaxants for his condition, that the normal recovery time for lower back pain is approximately fourteen days, and that Harris' position as a graphic designer is classified as a "sedentary occupation" that allowed him to "change positions at will." Id. Accordingly, Fortis concluded that Harris' condition was not sufficiently severe to prevent him from performing the duties of his regular occupation, as is required to entitle him to long-term disability benefits under the terms of the policy. Id.

On May 1, 2001, Harris wrote to Fortis requesting that it reconsider its determination that he was not eligible to receive disability benefits, citing his inability to sit or stand for long periods of or to perform any type of work since the date of his injury. Id. at 848. However, upon reviewing the additional medical records that Harris had submitted and considering the opinions of its clinical and medical directors, Fortis affirmed its previous decision to deny Harris' claim in a letter dated September 12, 2001. Id. at 769-70. Although this second denial letter acknowledged that Harris suffered from a "medical condition," Fortis again found that the restrictions associated with Harris' condition did not preclude him from performing sedentary work and thus concluded that its "prior determination to deny long term disability benefits remain[ed] appropriate." Id. at 770.

On September 30, 2001, Harris appealed this determination to Fortis' Disability Appeals Committee. Id. at 766. In addition to the evidence that was before the claims adjuster, the Appeals Committee considered the results of functional capacities evaluation test that Harris underwent on February 5, 2002 and the conclusions of Marjorie Eskay-Auerbach, a board certified orthopaedist who conducted an independent peer review of Harris' medical history. See id. at 548. Based on this evidence, the Committee affirmed the findings set forth in the March 2001 and September 2001 denial letters. Id. at 549. The Committee's decision was conveyed to Harris via a letter dated May 6, 2002, which also informed him that he had exhausted all available administrative remedies. Id.

On December 16, 2004, Harris filed an action in Sonoma County Superior Court, which defendants removed to this court on January 19, 2005. In his complaint, Harris asserts causes of action for recovery of employee benefits, breach of fiduciary duty, and equitable relief under ERISA. See 29 U.S.C. §§ 1104(a)(1), 1109, 1132(a)(1)(B), 1132(a)(2)-(3). The parties now cross-move for partial summary judgment on the issue of what standard of review should apply in evaluating Fortis' decision to deny Harris' disability benefits claim. While Harris argues that that this decision is subject to de novo review under ERISA, defendants contend that the court must review Fortis' findings under an abuse of discretion standard. The following memorandum and order addresses the parties' arguments.

3

LEGAL STANDARD

I. Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991). Nonetheless, even if summary adjudication of an entire claim is not warranted, Federal Rule of Civil Procedure 56(d) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial. Fed. R. Civ. Pro. 56(d); State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (Patel, J.).

II. Judicial Review of Benefits Determinations Under ERISA

The disability insurance plan at issue in this action is an employee benefit plan subject to the provisions of ERISA. A denial of ERISA benefits is reviewed de novo unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

4

construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Under Firestone, the default presumption is that the administrator has no discretion and must show that the plan confers discretionary authority. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir) (en banc), cert. denied, 528 U.S. 964 (1999). If the benefit plan confers discretion on the administrator, a reviewing court must apply an abuse of discretion standard. Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999); McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1132 (9th Cir. 1996) (per curiam).

Under the abuse of discretion standard, the court's review is limited to the administrative record, and the decision of an administrator will not be disturbed unless the court determines that the decision was arbitrary or capricious. McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310, 1316 (9th Cir. 1994), cert. denied, 514 U.S. 1066 (1995); Clark v. Washington Teamsters Welfare Trust, 8 F.3d 1429, 1431 (9th Cir. 1993). "The touchstone of 'arbitrary and capricious' conduct is unreasonableness." Clark, 8 F.3d at 1432. In contrast, under the de novo standard of review, the normal summary judgment standard applies, and the district court may grant summary judgment only if there are no genuine issues of material fact in dispute. Tremain v. Bell Indus., Inc., 196 F.3d 970, 978 (9th Cir. 1999).

DISCUSSION

The question presented in the parties' cross-motions for summary judgment is whether Fortis' finding that Harris was not "disabled" within the meaning of its long-term disability insurance policy should be subjected to de novo review rather than reviewed for abuse of discretion. As noted above, the "discretionary cause" in the policy unambiguously grants Fortis "the sole discretionary authority to determine eligibility for . . . benefits." Thus, if the clause is enforceable, the court must apply an abuse of discretion standard in reviewing Fortis' decision. Bendixen, 185 F.3d at 942; McClure, 84 F.3d at 1132.

Seeking to avoid that result, Harris identifies two reasons why the court should decline to enforce the policy's discretionary clause. First, he argues that the clause is void under California

5

Insurance Code § 10291.5(b) as that statute has been interpreted by the California Insurance Commissioner. Alternatively, Harris contends that Fortis' decision to deny his disability benefits claim was influenced by a conflict of interest, thereby requiring de novo review under the standard set forth in Firestone, 489 U.S. at 115. The court considers these arguments below.

I.   California Insurance Code § 10291.5(b)

As noted above, Harris first argues that the discretionary clause of Fortis' group long-term disability policy conflicts with the requirements of California Insurance Code § 10291.5(b), thereby rendering it void as a matter of public policy. The court is familiar with this argument, as it has previously considered, and rejected, an identical claim made by an ERISA beneficiary in Horn v. Provident Life & Accident Insurance Co., 351 F. Supp. 2d 954 (N.D. Cal. 2004) (Patel, J.). Like Harris, the plaintiff in Horn argued that a discretionary clause in a group disability insurance policy was unenforceable under California law and sought support for that position in the California Insurance Commissioner's interpretation of section 10291.5(b). The Insurance Commissioner's views were initially set forth in an opinion letter dated February 27, 2004 in which the Commissioner informed several group disability insurance providers of his intent to withdraw approval of the discretionary clauses contained in their policies based on the clauses' purported incompatibility with paragraphs (1) and (13) of California Insurance Code § 10291.5(b). See Grey Decl., Exh. 4, App. 1. The first provision cited prohibits including terms in an insurance contract that are "unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued." Cal. Ins. Code. § 10291.5(b)(1). The second, section 10291.5(b)(13), is a "catch-all" provision that precludes the Commissioner from approving any insurance policy provision that "fails to conform in any respect" with California law. Id. § 10291.5(b)(13).

The Commissioner's opinion letter concluded that the discretionary clauses at issue were void under both paragraphs (1) and (13). Considering the former, the Commissioner found that "because [a] discretionary clause effectively negates the operative terms of the contract, the contract becomes unintelligible, uncertain, ambiguous, abstruse and likely to mislead the insured, in violation

of Insurance Code § 10291.5(b)(1)." Grey Decl., Exh. 4, App. 1 at 1.  With respect to section 10291.5(b)(13), the Commissioner found that discretionary clauses may deprive the insured of "the protections of California insurance law," including the covenant of good faith and fair dealing and the rule that ambiguities in an insurance policy are resolved in favor of the insured. Id. at 2.  Thus, the Commissioner concluded that any disability insurance policy that includes such a discretionary clause is inconsistent with the requirements of the California Insurance Code and unenforceable under California law.

The plaintiff in Horn argued that this court should defer to the interpretation of section 10291.5(b) set forth in the Insurance Commissioner's informal opinion letter as persuasive authority within the meaning of in Skidmore v. Swift & Co., 323 U.S. 134 (1944).  The court rejected that argument, however, holding that the discretionary clause in the defendant insurer's policy was valid and enforceable under California law. See Horn, 351 F. Supp. 2d at 962-65.  The court sees no reason why it should reach a different conclusion here, despite the fact the Insurance Commissioner has now formally determined that the discretionary clauses in a number of group disability insurance policies violate section 10291.5(b). See Grey Decl., Exh. 4.  Indeed, as the court observed in Horn, the Insurance Commissioner's interpretation of paragraphs (1) and (13) of section 10291.5(b) is so gravely flawed that it seems improbable that any degree of formality could imbue the Commissioner's reasoning with substantial persuasive authority. See generally Horn, 351 F. Supp. 2d at 962-65.

That being said, the court need not even reach that issue in the case at bar because the Insurance Commissioner's order that Horn now cites does not affect the validity of the discretionary clause in the Fortis policy that is the subject of the present dispute. See Grey Decl., Exh. 4.  As this court has previously noted, California law does not provide an insured seeking reformation of an objectionable term in a group disability insurance policy with a private right of action against the insurer. See Firestone v. Acuson Corp. Long Term Disability Plan, 326 F. Supp. 2d 1040, 1050-51 (N.D. Cal. 2004) (Patel, J.) (citing Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 410-11 (9th Cir. 1995)); see also Horn, 351 F. Supp. 2d at 960.  Rather, where an insured seeks to invalidate

1 an insurance policy provision that has been previously approved by the Commissioner on the ground
2 that the provision is contrary to the requirements of section 10291.5(b), his or her "only potential
3 remedy is a writ of mandamus compelling the Commissioner to withdraw her approval." Firestone,
4 325. F. Supp. 2d at 1051. Furthermore, Insurance Code § 10291.5(f) provides that any action taken
5 by the Insurance Commissioner to withdraw approval of an insurance policy provision is "effective
6 [] prospectively and not retroactively." Cal. Ins. Code § 10291.5(f). It is undisputed that the Fortis
7 policy at issue here has been approved by the California Insurance Commissioner and that the
8 Commissioner's approval has not been withdrawn, prospectively or otherwise. Accordingly, there
9 can be no serious argument that Harris was bound by the terms of the policy's discretionary clause at
10 the time that he applied for long-term disability benefits in November 2000 as well as at the time that
11 Fortis made its final determination that he was ineligible to receive such benefits in May 2002. The
12 court thus concludes that the discretion-conferring language in the Fortis policy is valid and
13 enforceable.

14 II.     Conflict of Interest

15      Having concluded that the discretionary clause in Fortis' policy is enforceable under
16 California law, the court must nonetheless consider whether it should be enforced in the case at bar.
17 Harris argues that it should not be because Fortis' decision to deny his claim for long-term disability
18 benefits was influenced by a conflict of interest. The "conflict of interest" analysis that the Ninth
19 Circuit applies in adjudicating disputes of ERISA benefits arises from the plain meaning of the
20 statute, which provides that a plan administrator must "afford a reasonable opportunity to any
21 participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. §
22 1133(2); Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 879 (9th Cir.
23 2004). Thus, even where a provision in a benefits plan grants the administrator discretionary
24 authority to implement the plan, a court reviewing an administrator's decision to deny a claim for
25 ERISA benefits must weigh the existence of any conflict of interest that might have affected the
26 administrator in considering whether that discretion has been abused. Firestone, 489 U.S. at 115.

8

If such a conflict is found to exist, the court must further distinguish between the mere appearance of a conflict of interest, which arises by virtue of the administrator's "economic stake in the benefit decision which it makes," and a conflict that actually "caused a breach of the administrator's fiduciary duty to the beneficiary." Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1322-23 (9th Cir. 1995); see also Nord v. Black & Decker Disability Plan, 356 F.3d 1008, 1010 (9th Cir.), cert. denied, __ U.S. __, 125 S. Ct. 62 (2004). In the case of the former—an "apparent conflict of interest"—the court's review is still for abuse of discretion, although the level of scrutiny is "less deferential" than it would otherwise be. Tremain v. Bell Indus., Inc., 196 F.3d 970, 976 (9th Cir. 1999) (quoting Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc., 125 F.3d 794, 798 (9th Cir. 1997)); see also Barnett v. Kaiser Found. Health Plan, Inc., 32 F.3d 413, 416 (9th Cir. 1994) (refusing to apply a heightened standard of review absent proof of a "serious" conflict of interest). On the other hand, de novo review may be appropriate if the affected beneficiary is able to produce evidence "beyond the mere fact of apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations." Atwood, 45 F.3d at 1323. If the beneficiary meets his or her burden of production on this issue, the plan administrator bears the burden of proving that the conflict of interest did not affect the decision to deny benefits. Id. In the event that the plan administrator fails to meet that burden, the court must review its interpretation of the plan de novo, "without deference to the administrator's tainted exercise of discretion." Id.

The Ninth Circuit has never explicitly defined the contours of what constitutes a breach of fiduciary duty in this context. However, when evaluating the possibility of such a breach, courts in this Circuit have appeared to focus on procedural irregularities or structural inconsistencies within the plan administrator's decisionmaking process rather than on the substantive accuracy of the administrator's decision. See, e.g., Nord, 356 F.3d at 1010 (internal quotation marks and citation omitted) (observing that "'material, probative evidence' [of a breach of fiduciary duty] may consist of inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or procedural irregularities in the processing of the beneficiaries' claims"); see also Friedrich v. Intel Corp., 181

9

F.3d 1105, 1110 (9th Cir. 1999) (holding that district court did not err in concluding that failure to provide notice of claim denial, together with an unfair review procedure and "inadequate dialogue" regarding the beneficiary's claim, supported the application of a de novo standard of review). The Ninth Circuit has also observed that a plan administrator's failure to adopt consistent reasoning in support of its decision weighs against applying a more deferential standard of review. See, e.g., Tremain, 196 F.3d at 977; Lang, 125 F.3d at 799.

Here, although Fortis is not the plan administrator, it is both the plan's insurer and its claims review fiduciary and is thus subject to the "apparent conflict" analysis set forth above. See Strouse v. Pruvalue Ins., No. C 02-4237 TEH, 2003 WL 21556932, at *1 (N.D. Cal. July 8, 2003) (Henderson, J.). Harris argues that this apparent conflict ripened into an actual conflict of interest that influenced Fortis' decision to deny his claim for long-term disability benefits, citing what he refers to as the "inconsistent bases" for denying his claim. See Pl.'s Mem. P. & A. at 15. However, the parties' submissions demonstrate that Fortis consistently denied Harris' claim for benefits because it found his back injury to be insufficiently severe to prevent him from performing sedentary work. That rationale was clearly set forth in the March 27, 2001 letter informing Harris that his claim had been denied, and it remained the basis for the Disability Appeals Committee's final determination that Harris was not eligible to receive long-term disability benefits. Compare Claim File at 849 (Mar. 27, 2001 Letter from Fortis to Harris) (concluding that "[Harris'] condition is not severe enough to prevent [him] from performing a sedentary occupation") with Claim File at 549 (May 9, 2002 Letter from Fortis to Harris) (finding that the restrictions imposed by Harris' medical condition "would not preclude [him] from performing sedentary level work").[1]

Harris disputes this characterization of the record, citing a number of communications that he received from Fortis as evidence of its "schizophrenic" approach to handling his claim. Pl.'s Mem. P. & A. at 16. The first communication that Harris identifies is the letter that Fortis sent him on February 19, 2001, which advised him that the policy's pre-existing condition provision applied to his claim because he had been employed by Legacy for less than twelve months at the time his purportedly disabling condition arose. Claim File at 882. However, the letter merely informed

1  Harris of the additional restrictions that the policy imposes on claims subject to that provision and
2  did not purport to make a final determination regarding his eligibility for benefits. See id. at 882-83.
3  Harris' suggestion to the contrary grossly distorts the record and is not well-taken.

4  Next, Harris contends that the rationale set forth in Fortis' June 20, 2003 letter is inconsistent
5  with the communications that preceded it. See id. at 546-47. Harris construes this letter, which
6  Fortis sent in response to a letter from Harris' physician, as presenting a newly asserted ground for
7  the denial of his claim: namely, that he was not disabled during the "Qualifying Period," which
8  Fortis' policy defines as the period ending ninety days from the insured's last day of active work.
9  Id. at 546. As an initial matter, the court notes that the relevance of the June 2003 letter is doubtful,
10 given that it was sent more than one year after the Appeals Committee denied Harris' final
11 administrative appeal. Nevertheless, the court may safely assume the letter to be admissible because
12 it again finds Harris' attempt to characterize Fortis' reasoning as inconsistent to be at odds with the
13 undisputed evidence in the record. Fortis' June 2003 letter clearly states Harris' benefits claim had
14 been denied because he did not satisfy the policy's definition of disability during the "Qualifying
15 Period": that is, that Harris' medical condition did not prevent him from performing the material
16 duties of his occupation for a period of at least ninety days from the date on which he ceased
17 working. Id. at 546-47. This is simply another way of saying that Harris' condition would not have
18 prevented him from performing sedentary work at the time of his injury, which is the same reason
19 that Fortis gave for denying his claim in March 2001, the same reason that it gave for affirming that
20 decision in September 2001, and the same reason that it gave for denying his final appeal of that
21 decision in May 2002. This hardly amounts to the kind of inconsistent reasoning that would give
22 rise to an inference that Fortis' findings were tainted by bad faith or self-interest.[2]

23 Finally, Harris asserts that Fortis failed to provide him with the information necessary to
24 perfect his appeal. However, despite his assertion that Fortis did not provide him with "specific
25 information necessary for an appropriate appeals process," Pl.'s Mem. P. & A. at 15, Harris fails to
26 identify any specific instance where Fortis neglected to provide him adequate information regarding
27 its appellate procedures. Moreover, the record as a whole demonstrates that Harris took full
28

11

advantage of those procedures by submitting additional evidence of his disability and arguing that Fortis overlooked certain aspects of his condition that limited his ability to work as a graphic designer. See generally Claim File at 788-848 (evidence submitted following March 2001 claim denial); Claim File at 551-766 (evidence submitted following September 2001 claim denial). The fact that Fortis rejected Harris' arguments and was not persuaded by the evidence that he submitted is not by itself sufficient to establish that its decision to deny benefits was influenced by a conflict of interest. See Atwood, 45 F.3d at 1323 (observing that "the simple fact that employees of [an ERISA fiduciary] made [a] decision to deny benefits is not enough to establish a breach of fiduciary duty").

While Harris raises a number of additional arguments in an attempt to establish a conflict of interest, these arguments are uniformly directed at the substance of Fortis' finding that he was not disabled rather than the procedures that Fortis used to arrive at that conclusion.[3] Such arguments may be relevant in determining whether Fortis abused its discretion in denying Harris' claim for disability benefits, but they are simply not sufficient to establish that the denial of his claim amounted to a breach of fiduciary duty. See id. Accordingly, in light of the absence of any evidence that Fortis' decision to deny Harris' claim was marred by the type of procedural irregularities or inconsistent reasoning that would warrant subjecting it to de novo review, the court concludes that defendants are entitled to summary judgment on the issue of the standard of review and concludes that the abuse of discretion standard of review applies. The court will therefore review Fortis' determination that Harris was not eligible to receive disability benefits for abuse of discretion.

CONCLUSION

For the reasons stated above, defendants' motion for partial summary judgment is GRANTED. Plaintiff's motion for partial summary judgment is DENIED. The court will review

12

defendants' decision to deny plaintiff's claim for disability benefits under an abuse of discretion standard.

  IT IS SO ORDERED.

Dated: August 3, 2005

                 _____
                 MARILYN HALL PATEL
                 District Judge
                 United States District Court
                 Northern District of California

**ENDNOTES**

1. It should be noted that Fortis' March 27, 2001 letter also identified Harris' failure to seek medical treatment for his condition as an alternative basis for denying his claim. Claim File at 849. Harris' subsequent efforts to obtain treatment from a physician (rather than merely relying on chiropractic treatment) mooted this ground for denying his benefits claim.

2. Nor does a fair reading of the record support Harris' contention that Fortis denied his final administrative appeal based on evidence of his ability to perform sedentary work at the time that the appeal was adjudicated rather than at the time that he ceased working. While Harris argues that Fortis' reliance upon the evaluation of his functional capacity that was conducted in February 2002 in determining that he was not disabled within the meaning of the policy necessarily implies that Fortis employed such a "present tense" standard in making that determination, it was reasonable for Fortis to believe that Harris' medical condition in February 2002 was relevant in determining whether he was able to perform sedentary work in October 2000. Any argument to the contrary is misplaced.

3. For example, Harris takes issue with the conclusions of Dr. Eskay-Auerbach, the outside physician who conducted an independent peer review of his claim, arguing that she failed to consider the fact that Harris' condition prevented him from remaining seated for the duration of an eight-hour workday. However, that Dr. Eskay-Auerbach's concluded that Harris would be able to avoid this problem by changing positions during the day simply means that she did not credit his unsubstantiated assertion that such an accommodation was impossible. See generally Claim File at 627-30. Harris' argument that she was wrong in doing so may be relevant in reviewing the merits of Fortis' decision, but it is hardly persuasive evidence that its conclusions were influenced by a conflict of interest. Accordingly, the court need not consider such arguments at this time.